# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOLORES ANDREWS, as Personal** | ) | |
| **Representative of the Estate of Kevin** | ) | |
| **Andrews, deceased,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **CIV. ACT. NO. 1:21-cv-194-TFM-M** |
| | ) | |
| **STEPHEN ANDREW BAILEY,** *et al*. | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants' *Motion for Summary Judgment* and brief in support (Docs. 25, 26, filed August 18, 2022). Plaintiffs filed a response and Defendants filed a reply. Docs. 28, 29. The motion has been fully briefed and is ripe for review. Having considered the motion, response, reply, and relevant law, the Court finds Defendants' motion for summary judgment (Doc. 25) is due to be **GRANTED in part** and Plaintiffs' remaining state law claims are **REMANDED** back to the Circuit Court of Baldwin County.

## I.    PARTIES, JURISDICTION, AND VENUE

Plaintiff Dolores Andrews brings this lawsuit as personal representative of the Estate of Kevin Andrews. Plaintiff Sara A. Jones brings this lawsuit as personal representative of the Estate of Joseph Andrews. Plaintiffs originally filed their complaint against Defendants the Town of Loxley, Stephen Andrew Bailey in his individual capacity and official capacity, and Huey Hoss Mack in his individual capacity and official capacity arising from the death of Kevin and Joseph Andrews following a high speed chase.

The District Court has subject matter jurisdiction over the claims in this action pursuant to

28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff asserts claims pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Procedural Background

On April 1, 2021, Plaintiffs filed their original complaint in the Circuit Court of Baldwin County against Defendants Town of Loxley ("Loxley"), Stephen Andrew Bailey ("Officer Bailey"), and Huey Hoss Mack ("Mack"). *See* Doc. 1-4. Plaintiff asserted four causes of action in the original complaint: (1) wrongful death pursuant to Ala. Code. § 6-5-410; (2) allegations of substantive due process violations under 42 U.S.C. § 1983 against Officer Bailey; (3) supervisory liability under 42 U.S.C. § 1983 against Mack; and (4) municipal liability under 42 U.S.C. § 1983 against Loxley. *Id*. Defendants removed the case to this Court. Doc. 1. Mack filed a motion to dismiss on April 29, 2021. Docs. 2, 3. Loxley and Officer Bailey filed an answer to the complaint on April 30, 2021. Doc. 4. The Court granted Mack's motion to dismiss, leaving Loxley and Officer Bailey (collectively, "Defendants") as the remaining Defendants and Counts I, II, and IV as the remaining causes of action. Doc. 7.

After discovery concluded, on August 18, 2022, Defendants filed their motion for summary judgment and brief in support. *See* Docs. 25, 26. Plaintiff timely responded and Defendants timely replied. *See* Docs. 28, 29.

B.      **Factual Background**[1]

This case arises from the untimely and tragic deaths of Kevin Andrews and Joseph Andrews, who were killed in a vehicle collision after Officer Bailey, an officer employed by Loxley Police Department, initiated a high speed chase of a Chevrolet Malibu driven by Dominic Scotti Garcia, Jr. ("Garcia"). Plaintiffs allege the following facts in their Complaint and response to summary judgment. *See* Docs. 1-4, 28.

On April 1, 2019, Joseph Andrews and Kevin Andrews left Milton, Florida in a 2018 Ford Escape traveling to San Diego, California. That same day, Garcia was driving a Chevrolet Malibu and traveling westbound on Interstate 10. Also that same day, Officer Bailey was working criminal interdiction on Interstate 10. He was driving a black Tahoe equipped with exterior lights in the grill and on the running boards, rear window, and top of the front window. Officer Bailey was pulled off the shoulder near the 49-mile marker on Interstate 10 working on a report when he noticed a Chevrolet Malibu pass by him. He states that he saw the vehicle driving in the inside or fast lane with several cars behind it. He noticed that the vehicle was traveling below the posted speed limit, and as he continued to watch he noticed several cars were bunched up behind it in the fast lane. Due to its driving behavior, he decided to follow the vehicle. He caught up with it at approximately the 51-mile marker and activated his rear flashing lights to warn traffic to back off and create space so that he could initiate a traffic stop.

---

[1] At the summary judgment stage  the facts are "what a reasonable jury could find from the evidence viewed in the light most favorable to the non-moving party." *Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) (quoting *Scott v. United States*, 825 F.3d 1275, 1278 (11th Cir. 2016)). "[W]here there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movant." *Id.* (quoting *Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016)). Therefore, the recitation of facts here are those construed in favor of the Plaintiff. "The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts." *Id.*

As he merged into the left lane to get behind the Malibu, Officer Bailey activated his front lights. The Malibu immediately switched back to the right lane and took the exit near mile marker 53. It took a left turn onto County Road 64, then turned back on to the onramp to Interstate 10 westbound. Officer Bailey had his lights on and engaged his siren as the Malibu moved back onto the interstate. At this point, he realized the vehicle was attempting to flee and he was trying to catch up with it to obtain the tag number. He stated that traffic was light and he radioed dispatch about the vehicle.

The Malibu continued westbound on Interstate 10 until the 49-mile marker, where it exited on to the Baldwin Beach Express. It traveled southbound on the Baldwin Beach Express, made a u-turn near Buc-ee's, and began traveling northbound on the Baldwin Beach Express. It then turned back on to the Interstate 10 onramp, traveling westbound. At one point, as Officer Bailey pursued the Malibu, he called in that it was traveling about 100 miles per hour.

Suddenly, around the 47-mile marker, the Malibu stopped abruptly on the interstate, causing Officer Bailey's vehicle to go past it slightly. It then made an immediate u-turn behind Officer Bailey's vehicle and started heading back eastbound in the westbound lanes. Officer Bailey turned around and followed the Malibu. Both vehicles were traveling in the inside lane, which would be the left lane for drivers headed westbound. Over the radio, Officer Bailey had the following conversation with Sergeant Randy Younce:

> Officer Bailey: "I'm starting to lose sight of the vehicle, traffic's heavy."
>
> Younce: "If traffic is heavy and you're, you need to cancel, terminate if you need to."
>
> Officer Bailey: "I believe the vehicle just wrecked out here just before the 49 exit."

Doc. 28-3 at 2. According to the time stamps on the radio transcript, the above conversation took place over the span of approximately 20 seconds. *Id.* It is not clear from the radio transcript

whether Officer Bailey terminated the chase prior to the accident, and the parties offer conflicting accounts as to that issue. Plaintiffs contend that the radio transcript and recording show that Officer Bailey did not end his pursuit of the Malibu until after the accident. *See* Doc. 28 at 5. While the Court must view the facts in the light most favorable to the Plaintiffs at this stage, it will briefly outline Defendants' version of the facts. Defendants counter that Officer Bailey recognized that the danger of his vehicle being behind the Malibu was creating a danger for the public and began to back off and lose sight of the Malibu. Doc. 26 at 9. Witness Shelia Christopher was traveling west on Interstate 10 around the time of the accident, and she claims to have witnessed the Malibu being followed by Officer Bailey. *Id.* at 10. She states that Officer Bailey did not appear to be in active pursuit of the speeding vehicle, that he at least 200 yards behind the other vehicle at that point, and that his flashing lights are what alerted her to merge over. *Id.*

### III.   STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a), (b). Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co.,* 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477

U.S. at 248, 106 S. Ct. at 2510).[2]  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  Only disputes about the material facts will preclude the granting of summary judgment.  *Id.*

The movant bears the initial burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1).  The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial.  *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553).  "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return

_____

[2] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (emphasis in original) (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled

to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

## IV.   DISCUSSION AND ANALYSIS

### A.   Substantive Due Process Claim

Plaintiffs assert a substantive due process violation brought pursuant to 42 U.S.C. § 1983 against Officer Bailey in his official and individual capacities, and against Loxley via municipal liability. Defendants first argue that Plaintiffs' substantive due process claim fails because they have not alleged a constitutional violation, and second assert qualified immunity as a defense to the extent that any § 1983 claim exists.

### i.   Officer Bailey

Plaintiffs assert a substantive due process violation brought pursuant to 42 U.S.C. § 1983 against Officer Bailey in his official and individual capacity. Officer Bailey argues that he is entitled to summary judgment on the § 1983 claim because his actions did not rise to the "shocks the conscience" level required to state a viable substantive due process claim in this case.

"[I]n a high-speed automobile chase aimed at apprehending a suspected offender [] . . . only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 836, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1988). In *Lewis*, a high-speed chase ensued after officers witnessed a motorcyclist speeding and the motorcyclist did not pull over in response to one of the officer's warning lights. *Id.* at 836-37. The chase lasted 75 seconds over the course of 1.3 miles and reached speeds up to 100 mile per hour. *Id.*

> The chase ended after the motorcycle tipped over as [the driver] tried a sharp left turn. By the time [the officer] slammed on his brakes, [the driver] was out of the way, but [the passenger] was not. The patrol car skidded into him at 40 miles an hour . . . [the passenger] was pronounced dead at the scene.

*Id.* The Supreme Court held:

> [The officer] was faced with a course of lawless behavior for which the police were
> not to blame. They had done nothing to cause [the driver]'s high-speed driving in
> the first place, nothing to excuse his flouting of the commonly understood law
> enforcement authority to control traffic, and nothing (beyond a refusal to call off
> the chase) to encourage him to race through traffic at breakneck speed forcing other
> drivers out of their travel lanes. [The driver]'s outrageous behavior was practically
> instantaneous, and so was [the officer]'s instinctive response. While prudence
> would have repressed the reaction, the officer's instinct was to do his job as a law
> enforcement officer, not to induce [the driver]'s lawlessness, or to terrorize, cause
> harm, or kill. [. . .]
>
> Regardless of whether [the officer]'s behavior offended the reasonableness held up
> by tort law or the balance struck in law enforcement's own codes of sound practice,
> it does not shock the conscience, and petitioners are not called upon to answer for
> it under § 1983.

*Id.* at 855.

While the *Lewis* case contains numerous concurrences and the analysis and reasoning appear to be a plurality, the actual holding and result are a majority. More importantly, Eleventh Circuit has repeatedly applied and upheld the "purpose to cause harm unrelated to the legitimate object of arrest" standard in § 1983 cases involving high-speed chases. *See Sanders v. City of Union Springs*, 207 F. App'x 960, 965 (11th Cir. 2006) (holding that plaintiffs' substantive due process claim fails because plaintiffs failed to prove that the officer acted with an intent to cause harm unrelated to the legitimate pursuit of a fleeing suspect); *Best v. Cobb Cnty.*, 239 F. App'x 501, 502, 504 (11th Cir. 2007) (affirming that, though the pursuit ended tragically, there was no constitutional violation where the fleeing vehicle crossed the center line and collided head on with a third-party vehicle); *White v. Polk Cnty.*, 207 F. App'x 977, 979 ("[W]hen unforeseen circumstances demand an officer's instant judgment – in situations such as a high-speed chase – a showing that an officer's recklessness caused plaintiff's injury is insufficient to support a substantive due process claim.") (citing *Lewis*, 523 U.S. at 1720).

Further, the Eleventh Circuit has held that "a person injured in an automobile accident caused by the negligent, or even grossly negligent, operation of a motor vehicle by a policeman acting in the line of duty has no section 1983 cause of action for violation of a federal right." *Cannon v. Taylor*, 782, F.2d 947, 950 (11th Cir. 1986). While *Cannon* did not involve a high-speed chase, the decedent was killed when an officer in a police vehicle struck her vehicle while speeding on his way to respond to a local disturbance without using his flashing lights or siren. Thus, it is perhaps even more persuasive than the previously cited cases where the fleeing vehicle in a high-speed chase cause the accident because the officer himself caused the accident.

Here, while his pursuit of Garcia ended tragically, there is no evidence or allegation that Officer Bailey pursued Garcia with the purpose to cause harm unrelated to the legitimate object of arrest. Without such evidence, in cases like this one involving a high-speed chase, there is no constitutional violation. Further, proof of negligence, gross negligence, or even recklessness in his operation of his motor vehicle are all insufficient as a matter of law to invoke a § 1983 cause of action against Officer Bailey. *See id.*; *see also White*, 207 F. App'x at 979 ("[A] showing that an officer's recklessness caused plaintiff's injury is insufficient to support a substantive due process claim.").

Thus, interpreting the facts in the light most favorable to the Plaintiffs, Officer Bailey is entitled to summary judgment on Plaintiffs' § 1983 claim because he did not act with the purpose to cause harm unrelated to the legitimate object of arrest, therefore his conduct did not amount to a constitutional violation.

Officer Bailey also asserts a defense of qualified immunity to the extent any § 1983 claim exists. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  To be protected by qualified immunity, the government official must first demonstrate that he was acting within the scope of his discretionary authority. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).  Next, courts utilize a two-part framework to evaluate qualified immunity claims.  *Castle v. Appalachian Tech. College*, 631 F.3d 1194, 1197 (11th Cir. 2011).  The first element is whether the plaintiff's allegations, if true, establish a constitutional violation.  *Pearson*, 555 U.S. at 232, 129 S. Ct. at 815-16 (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).  The second element is whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct.  *Id*. at 232, 129 S. Ct. at 816.  The first inquiry may be a mixed question of law or fact, but the second inquiry is purely a question of law.  *Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020).  "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Pearson*).  If a plaintiff fails to establish either one, then the defendant it entitled to qualified immunity.

Here, the Court finds that Officer Bailey's conduct did not amount to a constitutional violation, and even if it were, the violation is not clearly established.  Accordingly, the Court need not analyze the issue of qualified immunity further.

### ii.    The Town of Loxley

As noted above, Plaintiffs' § 1983 claim fails because Officer Bailey's conduct did not amount to a constitutional violation.  Since Plaintiffs' claim fails against Officer Bailey, it also

fails against Loxley. Thus, Loxley is likewise entitled to summary judgment on Plaintiffs' § 1983 claim.

Conclusion

Accordingly, Defendants' motion for summary judgment is **GRANTED** as it pertains to Plaintiffs' substantive due process claim.

**B.     Wrongful Death Claim**

Plaintiffs also assert a wrongful death claim pursuant to Ala. Code § 6-5-410. Defendants argue that they are entitled to summary judgment on Plaintiffs' wrongful death claim because Garcia, rather than Officer Bailey, caused the accident that resulted in decedents' deaths. Additionally, Defendants argue that state agent immunity applies. For the reasons stated below, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and instead remands them back to the Circuit Court of Baldwin County.

The Supreme Court has affirmed a district court's discretion to remand a removed case to state court when all federal-law claims have dropped out of the action and only pendent state-law claims remain. *See Carnegie-Mellon v. Cohill*, 484 U.S. 343, 348, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). The pendent jurisdiction doctrine provides:

> [A] federal court should consider and weigh in each case . . . the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.

*Id.* (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).

In *Carnegie-Mellon*, the Supreme Court further expanded that in cases where the matter was removed to federal court, the district court may relinquish jurisdiction by remanding the case,

rather than dismissing it without prejudice. *Id.* at 351 (noting that the pendent jurisdiction doctrine is designed to enable courts to handle state-law claims in the way that will best accommodate the values of economy, convenience, fairness, and comity, and "a remand of a removed case involving pendent claims will better accommodate these values than will a dismissal of the case[.]").

Defendants removed this case from state court based on federal question jurisdiction. Doc. 1 at 1. Thus, this Court has discretion to remand the pendant state-law claims if such remand will accommodate the values of economy, convenience, fairness, and comity. The accident from which this matter arose occurred on April 1, 2019. The statute of limitations for a wrongful death claim in Alabama is two years. ALA. CODE § 6-5-410. Almost four years have passed since the accident. Accordingly, fairness and comity weigh heavily in favor of remand. *See Carnegie-Mellon*, 484 U.S. at 352 ("[A] remand generally will be preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction . . .. Equally important, . . . [t]he preclusion of valid state-law claims initially brought in timely manner in state court undermines the State's interest in enforcing its law.").

Accordingly, Plaintiffs' remaining state law claims are **REMANDED** to the Circuit Court of Baldwin County.

## V.   CONCLUSION

Based on the foregoing discussion and analysis, it is hereby **ORDERED** as follows:

(1) Defendants' *Motion for Summary Judgment* (Doc. 25) is **GRANTED in part**. The motion is granted as to granted as to Plaintiffs' federal claims. The Court does not rule on the motion as it pertains to Plaintiffs' state law claims.

(2) This matter is **REMANDED** to the Circuit Court of Baldwin County, Alabama for resolution of Plaintiffs remaining state law claims.

Final judgment will be entered for the federal claims.  The Clerk of Court is **DIRECTED** to take the appropriate steps to effectuate the remand of the state law claims.

**DONE** and **ORDERED** this the 29th day of March 2023.

                 s/Terry F. Moorer
                 TERRY F. MOORER
                 UNITED STATES DISTRICT JUDGE